UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DAVID EDWARD JACKSON, III,

Petitioner,

v.                                                    CAUSE NO. 2:24-CV-10-PPS-AZ

INDIANA PAROLE BOARD,

Respondent.

<u>OPINION AND ORDER</u>

David Edward Jackson, III, proceeding pro se, filed an amended habeas petition to challenge his convictions for sexual misconduct with a minor in the Lake Superior Court under Case No. 45G02-1803-F4-11, Case No. 45G02-1803-F4-11, Case No. 45G02-1803-F4-9, and the related probation revocation proceedings. In March 2021, Jackson pled guilty to these criminal offenses, and on November 23, 2021, the Lake Superior Court resentenced him to a total of three years of incarceration.

Here's how the Indiana Court of Appeals summarized the factual basis for these convictions:

> Between 2014 and 2018, when Jackson was over thirty years old, he repeatedly and "on numerous occasions" molested three different girls who were fourteen to sixteen years old. Jackson compelled two girls to submit to being kissed by him and to his fondling of their genitals, breasts, or buttocks at two different game stores in Hobart. Jackson committed this fondling behavior against his third victim and also compelled her to touch his penis.

[ECF 23-6 at 2-3.]

In his amended petition, Jackson asserts twenty-four grounds for habeas relief. [ECF 15.] I first note that this habeas case differs from most in that Jackson has already been released from State custody. The relevant habeas statute, 28 U.S.C. § 2254(a), allows individuals to pursue habeas petitions only if they are "in custody pursuant to the judgment of a State court." However, in *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), the United States Supreme Court held that the custody requirement is satisfied if the petitioner was in custody at the time the petition was filed. Jackson filed the initial petition in this case on January 5, 2024, and the parties agree that he remained on parole until June 24, 2024. [ECF 1, ECF 33 at 2–4, ECF 34.] So, the custody requirement is satisfied for purposes of the petition as a whole.

In order to meet the Constitution's case-or-controversy requirement, a petitioner who is no longer in custody must demonstrate concrete and continuing "collateral consequences" from the conviction before a habeas petition can be heard. *Spencer*, 523 U.S. at 7. Jackson appropriately identifies his status as a registered sex offender as a collateral consequence. *See Chaidez v. United States*, 568 U.S. 342, 349 n.5 (2013); *United States v. Juv. Male*, 560 U.S. 558, 560–61 (2010); *Virsnieks v. Smith*, 521 F.3d 707, 720 (7th Cir. 2008). However, the sex offender registration requirement arises from Jackson's convictions rather than his revocations. *See* Ind. Code § 35-42-4-11(a) (requiring sex offender registration if convicted of certain offenses). As a result, I will not further consider claims relating to Jackson's probation revocation or sentencing.

**<u>Procedural Default</u>**

Before considering the merits of a habeas petition, I have to determine if any of the issues have been procedurally defaulted. The labyrinth of "procedural default" is where a lot of habeas cases go to die. One way that a claim can be procedurally defaulted is if the petitioner fails to exhaust all available remedies in State court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In other words, to get to the merits of a claim, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001).

Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal citation omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.* at 1026.

On March 12, 2020, Jackson initiated an interlocutory appeal under Case No. 20A-CR-00616 raising a speedy trial argument during pretrial criminal proceedings, but he did not seek transfer to the Indiana Supreme Court.[1] He did not pursue a direct appeal in connection with his convictions. On November 15, 2022, Jackson appealed the

---

[1] Pursuant to Fed. R. Evid. 201, I take judicial notice of the electronic dockets for the Indiana courts, which are available at https://public.courts.in.gov/mycase/.

imposition of his previously suspended sentence that followed his probation revocation, and the Indiana Court of Appeals remanded the case for resentencing. [ECF 23-3 at 6; ECF 23-6.] Jackson did not present at each level of the State courts any of his habeas claims challenging his convictions in these appellate proceedings.

But what about the State post-conviction proceedings? On April 6, 2022, Jackson filed a petition for post-conviction relief, asserting prosecutorial misconduct, dissemination of confidential information, "[v]iolation[s] of State and Federal Law," and insufficiency of the evidence. ECF 24-12 at 117-23. The Lake Superior Court found that these grounds were not appropriate for post-conviction review and that Jackson had waived them by not supporting them with evidence or addressing them in briefing. *Id.* at 161-69. The Lake Superior Court construed the petition as including: a claim that Jackson received ineffective assistance of trial counsel because trial counsel misadvised him about whether the plea agreement would allow him to reside with his family; and a claim that the guilty plea was involuntary due to misrepresentations about child visitation rights. *Id.*

On appeal, Jackson presented a different set of arguments, and the Indiana Court of Appeals found that he had waived these arguments because he did not present them to the Lake Superior Court. [ECF 23-10; ECF 23-13.] The appellate court found that Jackson had presented to the Lake Superior Court his argument that the Porter County Sheriff's website incorrectly indicated that he was required to register as a sex offender for life violated his guilty plea agreement. [ECF 23-13.] Jackson also raised this argument in a petition to transfer to the Indiana Supreme Court. [ECF 23-14 at 11.]

Consequently, while this breach of plea agreement claim was fairly presented to the State courts, all other claims challenging Jackson's convictions were procedurally defaulted.

In September 2024, in Case No. 24A-SP-02220, Jackson invited the Indiana Court of Appeals to lift the procedural bar with respect to his habeas claims by seeking authorization to pursue a successive petition for post-conviction relief, but the Indiana Court of Appeals declined to provide such authorization.

Therefore, I will proceed to the merits of the claim that the State breached its plea agreement when the Porter County Sheriff website incorrectly indicated that he was required to register as a sex offender for life. All other habeas claims challenging Jackson's convictions remain procedurally defaulted, unless one of the exceptions to procedural default applies, and that is the subject I will turn to next.

Jackson first asserts actual innocence as an excuse to his procedural default. A habeas petitioner can overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536–37 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citation omitted). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation omitted). "The reviewing court then considers the total record—all the evidence, old and new,

incriminatory and exculpatory—and makes a probabilistic determination about what reasonable, properly instructed jurors would do." *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015) (citation omitted). "It is not the role of the court to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* (citation omitted). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citation omitted).

Each of Jackson's three convictions pertains to a different victim. For his actual innocence argument, Jackson focuses on evidence pertaining to Case No. 45G02-1803-F4-9.[2] As far as I can tell after thoroughly reviewing the record, the prosecution's case largely relied on recorded interviews from the victim on March 8 and March 16, 2018, and on Jackson's testimony at his guilty plea hearings. For his part, Jackson offers the victim's recorded interviews, his own recorded interview, and a deposition transcript of Detective Robert Brazil as evidence that another individual committed the crime for which he was convicted.

In the pertinent criminal case, Jackson pled guilty to sexual misconduct with a minor as a Level 5 felony under Ind. Code § 35-42-4-9(b)(1). [ECF 24-15 at 7-8.] That provision reads:

> (b) A person at least eighteen (18) years of age who knowingly or intentionally performs or submits to any fondling or touching with a child less than sixteen (16) years of age with intent to arouse or to satisfy the

---

[2] Any further references to "the victim" in this section pertain to the victim in this particular criminal case.

sexual desires of either the child or the older person, commits sexual misconduct with a minor, a Level 6 felony. However, the offense is:

> (1) a Level 5 felony if it is committed by a person at least twenty-one (21) years of age.

Ind. Code § 35-42-4-9(b)(1).

On March 8, 2018, Detective Robert Brazil interviewed the victim.[3] The victim represented that Jackson engaged in a series of inappropriate actions with her beginning in January 2017 and persisted for months. These inappropriate actions consisted of pushing her against walls, kissing, remarks such as, "You want this," and "I want you so bad," grabbing her butt, touching her under her bra, and forcing her to touch his genital area. She denied that she had experienced this type of conduct before.

On March 15, 2018, Detective Brazil and two other police officers interviewed Jackson. Jackson repeatedly and adamantly denied any inappropriate conduct toward the victim but represented that she had confided to him that she had been molested by a cousin. He represented that he encouraged her to tell her family and that she stopped confiding in him shortly thereafter.

On March 16, 2018, Detective Brazil interviewed the victim a second time. She represented that she had confided in Jackson by telling him that she suffered from depression and that she cut herself. She denied that anyone else touched her inappropriately or telling Jackson about such an incident. Detective Brazil appeared to end the interview at 8:31 a.m. However, the interview resumed three minutes later with

---

[3] The interviews of Jackson and the victim were video recorded, and these recordings were manually filed by Jackson. [ECF 27.]

Detective Brazil stating that the victim had just told him she had not been completely honest. She then represented that, in 2015, her older teenage cousin from another state stayed at her house for one night. During that night, he laid next to her, kissed her, touched her inappropriately, and tried to remove her clothes. She explained that she was reluctant to share this with Detective Brazil due to embarrassment and the desire to conceal it from her parents. She confirmed that her representations about Jackson's conduct were true and that she was not merely attributing the cousin's misconduct to Jackson. She told Jackson about the cousin's misconduct before Jackson began inappropriately touching her.

On September 13, 2018, trial counsel deposed Detective Brazil, who testified as follows:

**Trial Counsel:** Did you meet with [the victim] on more than one occasion?

**Detective Brazil:** I did.

**Trial Counsel:** Why was that?

**Detective Brazil:** After Mr. Jackson was arrested and our interview with him, the stuff that he told us about her, I wanted to corroborate that with [the victim]. So I asked her to come back in and speak with me again.

**Trial Counsel:** Just so I'm following, after Mr. Jackson's arrest, [the victim] came back to give a second statement, is that correct?

**Detective Brazil:** Yes.

**Trial Counsel:** Was the second statement recorded?

**Detective Brazil:** Yes it was.

**Trial Counsel:** Have you provided that second statement to the prosecutor's office?

**Detective Brazil:** I did.

**Trial Counsel:** Just Tuesday?

**Detective Brazil:** Yes, sir.

**Trial Counsel:** Okay, so I have three recordings. I only have three. I only have one, allegedly, of the victim. So, okay, I'm going to probably have to review that too. What do you recall of that second conversation with [the victim], specifically, after you had spoken with Mr. Jackson.

**Detective Brazil:** Again, we bought her in, and Rochelle [a social worker] was with me. And we spoke to her and asked if there was anything else that she could remember, and we talked. You know, just kind of talking at first. And then I brought up was she ever abused or did anything happen to her previously like Mr. Jackson told me, and she denied that at first. And I asked her again if she ever had a conversation about that, and she said, "No." And then I asked about, "Did Mr. Jackson ever open up to you about something?" And she did say that they did talk and that he was victimized as a young child. I asked her, "Okay. Did you talk to him about anything?" She denied it. We stopped the interview. I talked a little bit more about stuff and that. And then I sent her on her way. Well, we finished the interview. I'll say that. I'm walking her back down to the lobby, back to her mom and dad, and she stops me in the corridor. And she said that she wasn't truthful with me. She had something further to say. During that interview, I did feel that she was not as open with me as in the other interviews.

**Trial Counsel:** Why is that?

**Detective Brazil:** She just seemed – her demeanor, her eye contact. It was just – when I asked those questions, I could – it was one of those – just a feeling that you have that she had more to say. That when I did ask about that, it was uncomfortable for her. She didn't want to tell me. And when she denied it, I was like well . . .

**Trial Counsel:** When you say that she had more to say, was that more about Mr. Jackson and the allegations between Mr. Jackson and her or just what had maybe happened to her?

**Detective Brazil:** Yes, sir. What happened in the past and them having that discussion. And that was my main reason for interviewing her again was that Mr. Jackson said that that happened, and she didn't tell me that

personally in the first interview. So I wanted to ask her again. And when she said that that didn't happen initially, I just didn't feel like she was being up front with me. And as we went down there, she did stop me of her own free accord and so we went back up to the interview room and spoke again. And she did. She told me that she did confide in Mr. Jackson and told him about a cousin, a family member that was somewhat inappropriate with her, and she explained it. And that he did talk about his role and that she felt comfortable in confiding in him because she had went through the same thing, and she did. And so she did now corroborate what he was saying, which is what my initial thing was to do with that. And she said that that happened prior. When they talked about that and she opened up to Mr. Jackson, that was before any inappropriate conduct or sexual activity occurred.

Brazil Dep. Tr. 32-36 (cleaned up).[4]

On February 23, 2021, pursuant to a plea agreement, Jackson stipulated that he was born in September 1980 and that the victim in Case No. Case No. 45G02-1803-F4-9 was born in August 2003.[5] The stipulation, which Jackson signed, stated the following facts:

12. That on number occasions between the dates of August 30, 2017, and February 28, 2019, David Edward Jackson III and [the victim] were together at Games Inn, located at 301 Center Street, Hobart, Lake County, Indiana.

13. That between said dates, [the victim] was fourteen (14) years of age and David Edward Jackson III was over twenty-one years of age.

14. That between said dates, David Edward Jackson III was aware of [the victim's] age.

15. That on numerous occasions between said dates and at said location, David Edward Jackson III grabbed [the victim's] hand and placed it on the front of his pants, forced her to touch his penis, touched [the victim] on her vaginal area outside of her clothing, and pushed her against the wall,

---

[4] This deposition transcript was manually filed by Jackson. [ECF 27.]

[5] The plea agreement, stipulation of fact, and the transcript for the February 2021 plea hearing was manually filed by Jackson. ]ECF 27.]

kissing her and folding her breasts while telling her, "I want you so bad" to satisfy his own sexual desires.

On February 26, 2021, the trial court held a plea hearing, and Jackson confirmed, under oath, that "all of the facts that are stated in the stipulated factual basis [were] accurately stated and true." He confirmed that he was admitting guilt that would lead to convictions. He confirmed that he was pleading guilty because he was "in fact, guilty of these crimes." The trial court advised Jackson that it would not accept a guilty plea to a crime that a defendant did not commit, and Jackson confirmed his understanding and reaffirmed his desire to plead guilty.

To start, the evidence does not strongly support Jackson's theory that the victim erroneously attributed sexual abuse by a family member to Jackson. The victim unambiguously indicated that sexual abuse by the family member occurred at a separate time and place and that she had told Jackson about it before the sexual abuse by Jackson had occurred. The evidence might establish the bare possibility for such a misattribution, but it goes no further. To Jackson's point, the victim's initial reluctance to disclose the family member abuse may have presented a credibility concern. However, she had a reasonable explanation for this reluctance, and her inconsistency on this point did not undermine her broader narrative that Jackson also subjected her to sexual abuse such that no reasonable juror could credit it.

With respect to incriminatory evidence, the record contains the victim's testimony from which the stipulations of fact were derived. That is alone sufficient evidence because a victim's testimony, by itself, is enough to support a conviction of

sexual assault. *Ali v. Baenen*, No. 12–cv–841–bbc, 2013 WL 4591980, at *4 (W.D. Wis.

Aug. 28, 2013) (collecting federal cases); *Deaton v. State*, 999 N.E.2d 452, 456 (Ind. Ct.

App. 2013) (collecting Indiana cases). What's more, Jackson affirmed these stipulations

of fact on *four separate occasions*.

Though Jackson initially denied any sexual misconduct in March 2018, a

reasonable jury might credit the victim's representations and Jackson's testimony in

2021 over this initial denial. As explained by the Seventh Circuit:

> [The petitioner] contend[s] that the default should be excused to avoid a
> "fundamental miscarriage of justice"—which is to say, the conviction of an
> innocent person. Factual innocence indeed relieves a petitioner of a
> procedural default, at least when the error affects the finding of guilt, as
> opposed to a non-capital sentence. Yet how could we conclude, in the
> statutory language, that "the facts underlying the claim . . . establish by clear
> and convincing evidence that but for constitutional error, no reasonable
> factfinder would have found the applicant guilty of the underlying
> offense"? Suppose that the six alibi witnesses had been called. That would
> at best have produced a draw: six eyewitnesses identify [the petitioner] as
> the culprit, six others exculpate him. That cannot establish that "no
> reasonable factfinder would have found the applicant guilty of the
> underlying offense"; it is black letter law that testimony of a single
> eyewitness suffices for conviction even if 20 bishops testify that the
> eyewitness is a liar.

*Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (cleaned up); *see also Moore-El v.*

*Luebbers*, 446 F.3d 890, 903 (8th Cir. 2006) ("The existence of such a 'swearing match'

would not establish that no reasonable juror could have credited the testimony of the

prosecution witnesses and found [the petitioner] guilty beyond a reasonable doubt.");

*Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005), cert. denied, 547 U.S. 1208, 126 S.Ct.

2887, 165 L.Ed.2d 920 (2006) (same).

In sum, based on the record before me, I cannot conclude that Jackson's assertion of actual innocence serves to excuse the procedurally defaulted nature of his claims.

Jackson claims next that ineffective assistance of counsel excuses his procedural default. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 87–90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default "must ordinary turn on whether the prisoner can show that some objective factor external to the defense impeded his counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

"Meritorious claims of ineffective assistance can excuse a procedural default." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). "But those claims must themselves be preserved; in order to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, a petitioner is required to raise the claims through one full round of state court review, or face procedural default of those claims as well." *Id.* (internal quotations and citation omitted). Because Jackson did not properly present any ineffective assistance of counsel claims regarding double jeopardy to the Indiana appellate courts, they are procedurally defaulted. And, because these ineffective assistance of counsel claims are procedurally defaulted, they cannot serve to excuse the procedurally defaulted nature of his habeas claims.

Jackson does not assert ineffective assistance of post-conviction counsel, but I will consider it in light of his pro se status and for the sake of completeness. As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." *Maples v. Thomas,* 565 U.S. 266, 280 (2012) (citation omitted); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). The exception is that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017). According to *Martinez*, inadequate assistance of post-conviction counsel includes both when post-conviction counsel renders ineffective assistance as defined by *Strickland v. Washington*, 466 U.S. 668 (1984), and when a post-conviction petitioner proceeds without counsel. *Martinez,* 566 U.S. at 14 ("[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.").

In the amended petition, Jackson asserts that his trial counsel was ineffective for "fail[ing] to request a *Franks* hearing to challenge the probable cause charging documents." [ECF 15 at 4-5.] The purpose of a *Franks* hearing is to challenge the validity of a probable cause finding on which a search warrant is based. *See United States v. Sanford*, 35 F.4th 595, 597 (7th Cir. 2022); *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). It is not a vehicle to challenge the sufficiency of the charging documents.

Further, there is no indication that the prosecution materially relied on evidence obtained through warrants to charge Jackson. Moreover, under Indiana law, "lack of probable cause is not grounds for dismissing a charging information." *Flowers v. State*, 738 N.E.2d 1051, 1055 (Ind. 2000), *abrogated on other grounds by Konkle v. State*, 253 N.E.3d 1068 (Ind. 2025); *Pond v. State*, 808 N.E.2d 718, 721 (Ind. Ct. App. 2004). Consequently, this ineffective assistance of trial counsel claim is not substantial, and it remains procedurally defaulted.

Jackson further represents throughout his filings that the State courts treated him unfairly and that the prosecution and law enforcement engaged in various forms of misconduct, but he does not suggest that these entities prevented him from fairly presenting his claims to the State courts or otherwise caused procedural default on the habeas claims related to his convictions. In sum, Jackson has identified no valid basis to excuse procedural default. Consequently, I will not discuss the merits of the procedurally defaulted claims.

## Merits of the Claim Not Procedurally Defaulted

Let's turn now to the claim that was not procedurally defaulted. But first, I'll discuss the standards governing my decision-making. "Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 575 U.S. at 316 (internal citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark,* 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted).

Jackson argues that the State breached its plea agreement when the Porter County Sheriff website incorrectly indicated that he was required to register as a sex offender for life. "[W]hen a plea rests in any significant degree on a promise or

agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, (1971). The operative plea agreement addresses sex offender registration as follows:

> P. The Defendant agrees and understands that as a result of the conviction in Cause # 45G02-1803-F4-000009, he is required to register as a sex offender for ten (10) years as required by law;

> Q. The Defendant agrees he has been fully advised of the registration requirements imposed on him as a result of this conviction.

[ECF 24-15 at 5.] On post-conviction appeal, the Indiana Court of Appeals acknowledged Jackson's difficulty in persuading the Porter County Sheriff to correct its website to accurately reflect the length of his sex offender registration requirements but found that it was not a basis for relief. [ECF 23-13 at 3–4].

The State court's determination on this claim was not unreasonable. Notably, the Porter County Sheriff's office has since corrected its website to show that Jackson must register for ten years.[6] Even if it had not, it would not matter for purposes of habeas review because a sheriff, through a website or otherwise, cannot extend the length of a registration requirement under Indiana law. *See* Ind. Code § 11-8-8-19. There is no indication that the State intends to enforce a lifetime registration requirement or that the website's reference to such a requirement amounted to more than a clerical error. It is unfortunate that such an error occurred and that it took so long to correct, but it does not present a valid basis for habeas relief.

---

[6] The Porter County Sheriff's Department maintains a Sex and Violent Offender web portal at https://www.portercountysheriff.com/sexoffenderregistry.

Jackson requests the opportunity to conduct discovery, an evidentiary hearing, and appointment of counsel. [ECF 28 at 9.] "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

To obtain an evidentiary hearing, a habeas petitioner must clear two significant legal hurdles. First, he must demonstrate that "such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Second, a habeas petitioner must show that he qualifies for an evidentiary hearing under 28 U.S.C. § 2254(e)(2):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), permits the appointment of counsel in a habeas corpus case, if "given the difficulty of the case and the litigant's ability, [he] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have . . . a reasonable chance of winning with a lawyer at his side." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (cleaned up, citation omitted).

Jackson has not identified any particular reason for conducting discovery or holding an evidentiary hearing, and, based on my review of the record, it does not appear that additional evidence would assist him with obtaining habeas relief in this case. Similarly, Jackson seeks appointment of counsel to effectively present his claims, but he has effectively presented his claims on his own. He did not successfully obtain habeas relief, but the primary obstacle was procedural default in State court rather than poor presentation of claims, arguments, or facts in this federal habeas case, and it is unclear how Jackson could have overcome procedural default even with appointed counsel. Therefore, the requests for limited discovery, an evidentiary hearing, and appointment of counsel are denied.

Jackson also seeks sanctions against the Warden for failing to file a complete State court record and for engaging in fraudulent conduct by falsely claiming that Jackson was not on parole at the time he filed his habeas petition. The electronic docket suggests that the Warden complied with the order to file the State court record in its

entirety, and Jackson identifies no specific omissions. [ECF 19, ECF 23, ECF 24.] I also clarify that the State court record contemplated by the order to show cause is the record and filings submitted to the State appellate courts on direct appeal and on post-conviction appeal. As a result, I decline to sanction the Warden on this basis.

The Warden's representations on whether Jackson was on parole or not when he filed the petition in this case requires more careful review. Though Jackson invokes the inherent power of the court to sanction parties, I find the framework set forth under Rule 11 of the Federal Rules of Civil Procedure to be more appropriate. This rule requires that an attorney who presents a pleading to the court certify that:

> to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery [and] . . . (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on believe or a lack of information.

Fed. R. Civ. P. 11(b).

Moreover:

> To measure the reasonableness of a party's inquiry into the factual bases of its claims, we look to a number of factors including: whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1028 (7th Cir. 1999) (citation omitted).

In the response brief, the Warden, through an Assistant Attorney General ("AAG"), primarily argued that Jackson did not satisfy the custody requirement because he had been released from parole in June 2023 prior to initiating this case. [ECF 23 at 5–6.] Jackson vigorously disputed this release date in the traverse and in a motion for sanctions, but the Warden did not concede that the parole release date was June 2024 until I ordered the parties to file a copy of the parole discharge order. [ECF 28, ECF 29, ECF 32, ECF 34.] The Warden did, however, ultimately concede the point, and the assigned AAG indicates that he relied on a representation from an attorney employed by the Indiana Department of Correction. [ECF 34.]

I am concerned that the AAG assigned to this matter made a material misrepresentation on a readily ascertainable fact and that it required prompting by the court to correct it. While I do not fault the AAG's initial reliance on the representations of another State attorney, Jackson's subsequent filings should have prompted him to investigate this critical fact and to correct the mistake without court intervention. He had two months to do so. That said, I do not perceive that the error was intentional or fraudulent. Counsel provided a plausible, non-fraudulent explanation for the misrepresentation, and his misstep in not promptly correcting it seems to be an isolated incident. Nothing more need be said except that I trust the AAG will be more careful in the future.

Jackson requested leave to file an oversized traverse, but there are no specific page limits for traverses filed in this court, so I deny this request as moot. [ECF 28.] He also moves to admit the evidence he submitted to the Court. [ECF 27.] To the extent he

asks me to review this evidence and to consider it as necessary to resolve the habeas petition, this motion is granted.

### Certificate of Appealability

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). For the reasons explained in this order, there is no basis for encouraging Jackson to proceed further.

For these reasons, the Court DENIES the amended habeas corpus petition [ECF 15]; GRANTS the motion to admit evidence [ECF 27]; DENIES the Petitioner's consolidated motion [ECF 28]; DENIES as UNNECESSARY the motion to expedite [ECF 35]; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on April 17, 2025.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT

22