

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF INDIANA**

**HAMMOND DIVISION**

| | |
|---|---|
| David Edward Jackson III,<br><br>  Petitioner,<br><br>v.<br><br>Warden<br><br>  Respondent. | **Federal Habeas Corpus Petition** Case No. 2:24-cv-00010<br><br>**Judge:** Philip P Simon<br>**Referred:** Abizer Zanzi<br>**Nature of Suit:** 530 Prisoner Petitions - Habeas Corpus – General<br>**Cause:** 28:2254 Petition for Writ of Habeas Corpus (State) |

# MEMORANDUM IN SUPPORT OF EXPEDITED RELIEF AND REQUEST FOR JUDICIAL NOTICE

S/_____ Date:04/17/2025
David Edward Jackson III
Petitioner – Defendant, pro-se
1759 Lawndale Dr.
Valparaiso IN, 46383
(219) 781-2799
myzenhost@gmail.com

1

# MEMORANDUM IN SUPPORT OF EXPEDITED RELIEF AND REQUEST FOR JUDICIAL NOTICE

Re: Dispositive Claims Involving (1) Unauthorized Dissemination of Immunized Confidential Information, and (2) Unauthorized Dual Probation Supervision with a Retaliatory Revocation Petition – Request for Expedited Relief to Safeguard the Civil Case Scheduled for April 28, 2025
Docket No.: 2:24-cv-00010-PPS-AZ

## I. INTRODUCTION AND SUMMARY OF URGENT CLAIMS

This memorandum supplements the emergency habeas petition filed on March 31, 2025, by focusing on two dispositive claims that require immediate judicial intervention before the petitioner's upcoming civil dissolution/family proceedings on April 28, 2025 (only 11 days from today). The extraordinary circumstances and the imminent risk of irreversible constitutional harm compel expedited review and appropriate relief:

1. **Unauthorized Dissemination of Immunized Confidential Information**: Despite the petitioner's binding plea and immunity agreements—and the constitutional protections defined in **Kastigar v. United States, 406 U.S. 441 (1972) and United States v. Hubbell, 530 U.S. 27 (2000)**—state officials have repeatedly disseminated confidential material. The possible introduction of such immunized information in the impending family proceedings threatens to irreparably injure the petitioner's fundamental parental rights and due process, as well as violate his Fifth Amendment protection against compelled self-incrimination as established in **Miranda v. Arizona, 384 U.S. 436 (1966).** This unauthorized dissemination also violates the Fourteenth Amendment's guarantee of equal protection under **Plyler v. Doe, 457 U.S. 202 (1982)**, which holds that state actions must be rationally related to legitimate state interests and applied evenhandedly. Further clarification on the scope of immunity is provided in **Pillsbury Co. v. Conboy, 459 U.S. 248, 254-55 (1983)**, which noted that *"[t]he Court's decisions in Kastigar and Portash emphasize the critical importance of protection against a future prosecution based on testimony compelled by use immunity."*

2. **Unauthorized Dual Supervision and Retaliatory Revocation Petition**: Under the petitioner's plea agreement and **Indiana Code § 35-38-2-1**, probation supervision was exclusively transferred to Porter County. Notwithstanding, Lake County officials—namely Probation Officer Jacob Otto and the Lake County Prosecutors Department—have asserted an unsanctioned "dual supervision" and, in direct retaliation for the petitioner's reporting of unauthorized access, have filed a revocation petition. The failure of the Magistrate to examine the lack of jurisdiction renders these proceedings void, as established in **State ex rel. Hight v. Marion Superior Court, 547 N.E.2d 267 (1989)**. These actions violate the Fourteenth Amendment's due process guarantees and the Sixth Amendment's right to counsel

2

as articulated in **Gideon v. Wainwright, 372 U.S. 335, 344 (1963)**, which held that *"in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."*

Accordingly, the petitioner respectfully requests that these dispositive matters receive expedited review, with all other claims deferred until the immediate threats to his constitutional rights are resolved.

## II. FACTUAL AND PROCEDURAL BACKGROUND
### A. Immunity Agreement and Unauthorized Dissemination

1. **Binding Immunity**: The petitioner entered binding plea and immunity agreements that unequivocally protect any statements made during court-ordered therapy and polygraph sessions. In Kastigar, the Court explained that:

   > *"[T]he proclamation of immunity is a conditional promise designed to secure the cooperation of the deponent without self-incrimination,"* thereby ensuring that such evidence is not used against the petitioner. In United States v. Hubbell, the Court further clarified that *"any use – direct or indirect – of immunized information constitutes a new constitutional violation."* Thus, the petitioner is entitled to comprehensive protection under the Fifth Amendment. As Justice Harlan noted in his concurrence in Murphy v. Waterfront Commission, 378 U.S. 52, 79 (1964), immunity protections must be *"as broad as the evil against which they are directed."*

2. **Ongoing Prejudice**: Despite this immunity, state officials have disseminated the protected information to unauthorized third parties. Such misuse has already tainted prior civil proceedings and now poses an imminent risk that the immunized material will be introduced in the upcoming family proceedings. This would deprive the petitioner of his fundamental parental rights and force him into an unconstitutional choice between maintaining his Fifth Amendment rights or protecting his relationship with his children. The harm is irreparable, as explained in **Brady v. Maryland, 373 U.S. 83 (1963)** and **Elrod v. Burns, 427 U.S. 347 (1976)**. This dissemination also potentially violates privacy rights under Katz v. United **States, 389 U.S. 347, 351 (1967)**, which established that *"the Fourth Amendment protects people, not places,"* and recognized legitimate expectations of privacy in confidential communications. These actions could be actionable under 42 U.S.C. **§ 1983**, as established in **Monroe v. Pape, 365 U.S. 167 (1961)**, which provides a remedy for individuals deprived of constitutional rights by state officials acting under color of law.

### B. Exclusive Probation Supervision and Unauthorized Revocation

3

1. **Exclusive Supervisory Authority:** The petitioner's plea agreement expressly provided that probation supervision would be handled solely by Porter County. **Indiana Code § 35-38-2-1** states:

   *"The sentencing court shall specify conditions for probation and designate the county or entity responsible for its supervision. No other county may assume supervisory authority absent a formal, court-sanctioned transfer."*

   Docket records from both Porter and Lake Counties confirm that no valid transfer has occurred. As held in **State ex rel. Hight, 547 N.E.2d 267, 269 (1989):**

   *"Any action taken without proper jurisdiction is null and void."* As further explained in **Williams v. State, 754 N.E.2d 584, 587 (Ind. 2001),** *"jurisdiction is the legal power to hear and determine a cause, and if a court acts without jurisdiction its acts are null and void."* The Indiana Court of Appeals has also noted that *"Subject matter jurisdiction is the power of a court to hear and determine a particular class of cases,"* and *"the lack of subject matter jurisdiction can be raised at any time and renders a judgment void."* **Allen v. Proksch, 832 N.E.2d 1080, 1095 (Ind. Ct. App. 2005).**

2. **Retaliatory Revocation Petition:** After the petitioner reported unauthorized access to his immunized information, Lake County officials retaliated by filing a revocation petition in Lake County Superior Court, based on an unsupported claim of "dual supervision." The Magistrate's failure to scrutinize the proper jurisdiction constitutes a severe procedural error, resulting in an additional three years of incarceration imposed without lawful authority. Such retaliatory conduct violates not only due process and equal protection principles but also several ethical mandates:

   a. **For Probation Officers:** The **National Probation Standards** and the **American Probation and Parole Association's Code of Ethics** require strict adherence to court-assigned authority.

   b. **For Prosecutors: ABA Model Rule 3.8** and the **National Prosecution Standards** prohibit prosecutorial retaliation and require that state officials refrain from actions that compromise constitutional rights. As the Supreme Court noted in **Berger v. United States, 295 U.S. 78, 88 (1935),** the prosecutor *"is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."*

   c. **For Judges:** The **Code of Judicial Conduct (Canons 2 and 3)** mandates diligent jurisdictional review and impartiality in protecting litigants' rights. As the Supreme Court articulated in **United States v. Will, 449 U.S. 200,**

4

**218 (1980)**, *"The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."*

3. **Prejudicial Impact:** The unauthorized revocation has resulted in an additional three years of incarceration, producing a substantial risk of irreparable harm as recognized in **Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998)**. As the Court observed in **Youngberg v. Romeo, 457 U.S. 307, 316 (1982)**, *"liberty from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."* Justice Kennedy noted in his concurrence in **Clinton v. City of New York, 524 U.S. 417, 450 (1998)**, *"Liberty is always at stake when one or more of the branches seek to transgress the separation of powers."*

## III. LEGAL ARGUMENT

### A. Standard for Emergency Injunctive Relief

To obtain injunctive relief, the petitioner must demonstrate:

1. A likelihood of success on the merits,
2. Irreparable harm,
3. A balance of equities tipping in his favor, and
4. A determination that public interest factors support relief.

In **Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008)**, the Supreme Court underscored that constitutional violations—especially those implicating fundamental rights—unquestionably constitute irreparable harm. Here, the threatened harm is substantial: the introduction of immunized information into family proceedings would effectively erode core constitutional protections while the unauthorized revocation process already produced significant deprivation of liberty. As the Ninth Circuit emphasized in **Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)**, *"[t]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"*

### B. First Dispositive Claim: Unauthorized Dissemination of Immunized Information

1. **Comprehensive Constitutional Protection:** The immunity granted in **Kastigar, 406 U.S. at 453**, is *"coextensive with the privilege against self-incrimination,"* meaning that any use—even indirectly—of such information is forbidden. As the Court in **Hubbell, 530 U.S. at 38**, emphasized, protecting the integrity of this immunity is essential to ensuring that an individual is never forced to choose between exercising a constitutional right and facing adverse consequences in another proceeding. The Court has further emphasized in **United States v. Bagley, 473 U.S. 667, 678 (1985)**, that the underlying concern is *"avoidance of an unfair trial to the accused,"* a principle that applies equally to civil proceedings where fundamental rights are at stake.

2. **Immediate Threat to Parental Rights:** The introduction of immunized information in the imminent family court proceedings would force the petitioner into an unconstitutional dilemma. As noted in **Troxel v. Granville, 530 U.S. 57, 65 (2000)**:

> *"The right to parent is perhaps the oldest of the fundamental liberty interests recognized by this Court."*

5

Permitting the use of immunized information to influence custody or visitation determinations would inflict irreparable harm on this fundamental interest. The Supreme Court has consistently rejected such constitutionally impermissible choices. See **Simmons v. United States, 390 U.S. 377, 394 (1968)** (finding it "intolerable that one constitutional right should have to be surrendered in order to assert another").

3. **No Adequate Post-Adjudication Remedy**: As observed in **Elrod v. Burns, 427 U.S. 347, 373 (1976)**, the loss of constitutional freedom—even for a short period—is an irreparable injury. Once tainted information is admitted into the record, ordinary appellate remedies cannot expunge its effects. Certain errors are *"so intrinsically harmful as to require automatic reversal… without regard to their effect on the outcome."* **Neder v. United States, 527 U.S. 1, 8 (1999)**.

C. **Second Dispositive Claim: Unauthorized Dual Supervision and Revocation Petition**

1. **Lack of Statutory Jurisdiction: Indiana Code § 35-38-2-1** clearly limits supervisory authority to the county designated by the sentencing court—Porter County, in this case. Because no formal transfer has occurred, Lake County's claim of "dual supervision" is entirely baseless. As stated in **State ex rel. Hight, 547 N.E.2d 267, 269 (1989)**: *"Actions taken without the requisite jurisdiction are null and void."* Similarly, the U.S. Supreme Court in **United States v. Cotton, 535 U.S. 625, 630 (2002)** affirmed that subject-matter jurisdiction is nonwaivable and foundational: *"subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."* This statutory framework was deliberately created to prevent jurisdictional overreach. As noted in **Twyman v. State, 459 N.E.2d 705, 707 (Ind. 1984)**, *"When the legislature enacts a statute, it is presumed to have been aware of existing statutes relating to the same subject matter."*

2. **Procedural and Due Process Violations**: The unauthorized revocation process deprived the petitioner of liberty—resulting in an additional three years of unjust incarceration—without providing the procedural safeguards required by **Mathews v. Eldridge, 424 U.S. 319 (1976)**. The absence of a proper jurisdictional determination renders the entire proceeding void and unlawful. The Supreme Court has emphasized: *"without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."* **Ex parte McCardle, 74 U.S. 506, 514 (1868)**.

3. **Retaliatory Conduct and Equal Protection**: The timing of the revocation petition—filed immediately after the petitioner reported unauthorized dissemination—demonstrates retaliatory motive. As explained in **Hartman v. Moore, 547 U.S. 250 (2006)**, retaliatory actions against protected activity constitute a serious violation of constitutional rights under the Equal Protection Clause. The petitioner was singled out for adverse treatment, and no rational basis exists for such discrimination. This presents a "class of one" equal protection claim, as recognized in **Village of Willowbrook v. Olech, 528 U.S. 562,**

**564 (2000)**, where the Court held that such claims are cognizable *"where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."*

4. **Judicial Notice of Docket Records: Federal Rule of Evidence 201** and corresponding state rules require that courts take judicial notice of uncontested facts easily ascertained from official records. The docket records from both Porter and Lake Counties conclusively demonstrate that no supervisory transfer occurred. Taking judicial notice of these records will confirm that Lake County's exercise of authority is entirely unsupported. As Justice Alito noted in **Dupree v. Younger, 140 S. Ct. 530, 531 (2019)** (concurring), *"courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."* The Supreme Court has similarly taken judicial notice of court records when relevant. See **Cutter v. Wilkinson, 544 U.S. 709, 718 n.7 (2005)** (taking judicial notice of a consent decree entered in another proceeding).

5. **Federal Court Intervention**: The **Ex Parte Young doctrine, 209 U.S. 123 (1908)**, provides a well-established exception to sovereign immunity that allows federal courts to enjoin state officials from violating federal law. While Younger abstention generally counsels federal courts to abstain from interfering with ongoing state proceedings, this doctrine does not apply when state proceedings are being conducted in bad faith or are flagrantly unconstitutional. **Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982)**. The jurisdictionally void revocation proceedings here demonstrate precisely the extraordinary circumstances that justify federal intervention.

## D. Synthesis and the Need for Expedited Relief

Given these two dispositive claims:

1. The injunctive relief to bar the use of immunized information and the declaratory judgment invalidating the revocation petition are necessary to protect the petitioner's fundamental constitutional rights. Courts have inherent authority to *"manage their own affairs so as to achieve the orderly and expeditious disposition of cases."* **Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962).**

2. Expedited relief is vital because the civil dissolution/family proceedings scheduled for April 28, 2025, are imminent. Without relief, irreparable harm will occur that cannot be undone after the fact. Federal courts have *"inherent power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."* **Landis v. North American Co., 299 U.S. 248, 254 (1936).**

3. The remaining claims in the habeas petition should be deferred until after the immediate dispositive issues—those that jeopardize constitutional rights—are resolved. Courts should *"avoid reaching constitutional questions in advance of the necessity of deciding them."* **Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988).**

## IV. REQUEST FOR RELIEF

For the foregoing reasons, the petitioner respectfully requests that this Court:

7

1. **Enter Immediate Injunctive Relief**: Issue a provisional injunction banning the use, dissemination, or reliance on any immunized confidential information during the civil dissolution/family proceedings scheduled for April 28, 2025. This injunction is necessary to protect the petitioner's Fifth Amendment rights and parental liberties. Federal courts have a particular responsibility to protect against state actions that threaten federal constitutional rights. **Mitchum v. Foster, 407 U.S. 225, 242 (1972)**.
2. **Declare the Revocation Petition Void**: Render a declaratory judgment that finds Lake County's revocation petition void ab initio due to its reliance on an unauthorized assertion of dual supervision, in violation of **Indiana Code § 35-38-2-1** and the controlling precedent in **State ex rel. Hight, 547 N.E.2d 267, 269 (1989)**. Federal courts possess inherent power to *"fashion an appropriate sanction for conduct which abuses the judicial process."* **Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)**.
3. **Take Judicial Notice**: Take judicial notice of the official docket records of both Porter and Lake Counties mentioned in the previous motions, which unequivocally establish that no transfer of supervisory authority occurred. Under **Federal Rule of Evidence 201(c),** a court *"may take judicial notice on its own; or must take judicial notice if a party requests it and the court is supplied with the necessary information."*
4. **Prioritize Expedited Review**: Prioritize these dispositive claims for immediate review, deferring consideration of remaining habeas claims until after this immediate relief is granted. The **Declaratory Judgment Act, 28 U.S.C. § 2201**, empowers federal courts to issue declaratory judgments in cases of "actual controversy" where such declarations would serve to clarify legal relations. **MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)**.
5. **Order a Status Conference**: Schedule an immediate status conference to resolve these urgent matters and to establish an expedited procedural schedule to ensure that the petitioner's rights are preserved before the family proceedings occur. This is necessary given that constitutional violations generally constitute irreparable injury warranting immediate relief. **Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982)**.

## V. CONCLUSION

The petitioner has suffered—and continues to suffer—irreparable constitutional injury from both the unauthorized dissemination of immunized confidential information and the retaliatory, jurisdictionally void revocation proceedings initiated by Lake County officials. These actions violate fundamental guarantees of the Fifth and Fourteenth Amendments, as well as established state statutory requirements and ethical standards governing judicial, probationary, and prosecutorial conduct.

With the civil dissolution/family case scheduled for April 28, 2025, immediate judicial intervention is imperative. Granting the requested injunctive and declaratory relief will safeguard the petitioner's constitutional rights, protect his fundamental parental interests (a right described in **Troxel v. Granville, 530 U.S. 57 (2000)**), and preserve the integrity of the judicial process. The Court's proactive action in this matter is necessary to prevent further irreversible harm. As the Supreme Court emphasized in **Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 889 (2009)**, court systems need structures that *"help maintain the proper distance between judges and parties,"* reinforced by *"codes of judicial conduct,"* which play

a vital role in *"safeguarding public confidence in the fairness and integrity"* of our judicial system.

For a preliminary injunction to preserve the status quo, *"the purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held."* **University of Texas v. Camenisch, 451 U.S. 390, 395 (1981)**. The constitutional violations at issue here—unauthorized dissemination of immunized information and jurisdictionally void revocation proceedings—demand immediate judicial intervention to prevent irreparable harm to fundamental rights protected by the Constitution.

Respectfully submitted,

S/_____  Date:04/17/2025

David Edward Jackson III

Petitioner – Defendant, pro-se

1759 Lawndale Dr.

Valparaiso IN, 46383

(219) 781-2799

myzenhost@gmail.com

9

## APPENDIX: ADDITIONAL SUPPORTING AUTHORITIES

### Constitutional and Statutory Provisions
- **Fifth Amendment, U.S. Constitution:** Protection against self-incrimination.
- **Sixth Amendment, U.S. Constitution:** Right to counsel in criminal proceedings.
- **Fourteenth Amendment, U.S. Constitution:** Guarantees due process and equal protection.
- **Indiana Code § 35-38-2-1:** Establishes exclusive probation supervision authority for the designated county.
- **42 U.S.C. § 1983:** Provides a remedy for deprivation of constitutional rights under color of state law.
- **18 U.S.C. § 1513:** Prohibits retaliatory actions against witnesses.
- **28 U.S.C. § 2201:** Declaratory Judgment Act.

### Federal Rules and Local Court Provisions
- **Federal Rule of Evidence 201:** Authorizes judicial notice of uncontested facts (including docket records).
- **Northern District of Indiana Local Rule 65-1:** Mandates expedited consideration for emergency injunctive relief motions.

### Supreme Court and Circuit Precedents
- **Kastigar v. United States,** 406 U.S. 441 (1972)
- **United States v. Hubbell,** 530 U.S. 27 (2000)
- **Miranda v. Arizona,** 384 U.S. 436 (1966)
- **Plyler v. Doe,** 457 U.S. 202 (1982)
- **Pillsbury Co. v. Conboy,** 459 U.S. 248 (1983)
- **Gideon v. Wainwright,** 372 U.S. 335 (1963)
- **Brady v. Maryland,** 373 U.S. 83 (1963)
- **Elrod v. Burns,** 427 U.S. 347 (1976)
- **Katz v. United States,** 389 U.S. 347 (1967)
- **Monroe v. Pape,** 365 U.S. 167 (1961)
- **Troxel v. Granville,** 530 U.S. 57 (2000)
- **State ex rel. Hight v. Marion Superior Court,** 547 N.E.2d 267 (1989)
- **Williams v. State,** 754 N.E.2d 584 (Ind. 2001)
- **Allen v. Proksch,** 832 N.E.2d 1080 (Ind. Ct. App. 2005)
- **Berger v. United States,** 295 U.S. 78 (1935)
- **United States v. Will,** 449 U.S. 200 (1980)
- **Youngberg v. Romeo,** 457 U.S. 307 (1982)
- **Clinton v. City of New York,** 524 U.S. 417 (1998)
- **Steel Co. v. Citizens for a Better Environment,** 523 U.S. 83 (1998)
- **United States v. Cotton,** 535 U.S. 625 (2002)
- **Hartman v. Moore,** 547 U.S. 250 (2006)

10

- **Winter v. Natural Resources Defense Council**, 555 U.S. 7 (2008)
- **Melendres v. Arpaio**, 695 F.3d 990 (9th Cir. 2012)
- **United States v. Bagley**, 473 U.S. 667 (1985)
- **Simmons v. United States**, 390 U.S. 377 (1968)
- **Neder v. United States**, 527 U.S. 1 (1999)
- **Twyman v. State**, 459 N.E.2d 705 (Ind. 1984)
- **Ex parte McCardle**, 74 U.S. 506 (1868)
- **Village of Willowbrook v. Olech**, 528 U.S. 562 (2000)
- **Dupree v. Younger**, 140 S. Ct. 530 (2019)
- **Cutter v. Wilkinson**, 544 U.S. 709 (2005)
- **Ex Parte Young**, 209 U.S. 123 (1908)
- **Middlesex County Ethics Comm. v. Garden State Bar Ass'n**, 457 U.S. 423 (1982)
- **Link v. Wabash R. Co.**, 370 U.S. 626 (1962)
- **Landis v. North American Co.**, 299 U.S. 248 (1936)
- **Lyng v. Northwest Indian Cemetery Protective Ass'n**, 485 U.S. 439 (1988)
- **Mitchum v. Foster**, 407 U.S. 225 (1972)
- **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991)
- **MedImmune, Inc. v. Genentech, Inc.**, 549 U.S. 118 (2007)
- **Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.**, 454 U.S. 464 (1982)
- **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009)
- **University of Texas v. Camenisch**, 451 U.S. 390 (1981)
- **Murphy v. Waterfront Commission**, 378 U.S. 52 (1964)

**Ethical Standards and Conduct Codes**
- **ABA Model Rule 3.8** ("Special Responsibilities of a Prosecutor"): Prohibits retaliatory conduct and mandates that prosecutors act as ministers of justice.
- **Code of Judicial Conduct** (Canons 2 & 3): Requires judges to avoid impropriety, ensure procedural fairness, and rigorously examine jurisdictional issues.
- **National Association of Probation Executives Standards & American Probation and Parole Association Code of Ethics**

# VERIFICATION OF ACCURACY

"I verify / affirm under penalties of perjury that all information within this motion and attached exhibits is factual and accurate to the best of my abilities, knowledge and belief.

S/ _____ Date:04/17/2025
David Edward Jackson III
Petitioner – Defendant, pro-se
1759 Lawndale Dr.
Valparaiso IN, 46383
(219) 781-2799
myzenhost@gmail.com

# CERTIFICATE OF SERVICE

I certify that I have manually filed the foregoing document. I also certify that on this date, I served the foregoing document upon the following person by first-class U.S. Mail, postage prepaid:

Jesse R. Drum
Assistant Section Chief, Criminal Appeals
OFFICE OF INDIANA ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South 302 West Washington Street,
Fifth Floor Indianapolis, Indiana 46204-2770
317-234-7018 (telephone) Jesse.Drum@atg.in.gov

S/ _____ Date:04/17/2025
David Edward Jackson III
Petitioner – Defendant, pro-se
1759 Lawndale Dr.
Valparaiso IN, 46383
(219) 781-2799
myzenhost@gmail.com

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7-1(f), I certify that this motion contains 4,640 words, excluding the case caption, table of contents, table of authorities, and certificates and 15 pages.

S/ _____ Date:04/17/2025
David Edward Jackson III
Petitioner – Defendant, pro-se
1759 Lawndale Dr.
Valparaiso IN, 46383
(219) 781-2799
myzenhost@gmail.com

12